UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

**KENNETH KROL as Administrator of the Estate of
JEANETTE KROL, Deceased,**

                   **Plaintiff,**

v.                                         21-CV-1038 (NAM/ATB)

**THE COTTAGES AT GARDEN GROVE,**

                   **Defendant.**
───────────────────────────────────────

NAPOLI SHKOLNIK, PLLC
Nicholas R. Farnolo
400 Broadhollow Road, Suite 305
Melville, New York 11747
*Attorneys for Plaintiff*

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
Andrew S. Holland
Lori R. Semlies
200 Great Oaks Boulevard, Suite 228
Albany, New York 12203
*Attorneys for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Kenneth Krol, as Administrator of the Estate of Jeanette Krol, deceased, ("Plaintiff") initially brought this action in the Supreme Court of the State of New York, Oneida County, asserting State law personal injury claims against the Cottages at Garden Grove ("Defendant"), a nursing home in Cicero, New York. (Dkt. No. 1). Now before the Court are:

1

1) Defendant's motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6); and 2) Plaintiff's motion for remand to State court in accordance with 28 U.S.C. § 1447.  (Dkt. Nos. 10, 14).  For the reasons stated below, Plaintiff's motion to remand is granted and Defendant's motion to dismiss is denied as moot.

## II.    BACKGROUND

### A.    Procedural Background[1]

On July 7, 2021, Plaintiff commenced an action in New York State Supreme Court, County of Oneida, under Index No. 001626/2021, asserting claims against Defendant in connection with the death of Jeanette Krol.  (Dkt. No. 1, ¶ 1).  On September 18, 2021, Defendant removed the case to this Court.  (*Id.*, ¶¶ 1–5).  On September 27, 2021, Defendant moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (Dkt. No. 10).  On October 18, 2021, Plaintiff moved to remand pursuant to 28 U.S.C. § 1447.  (Dkt. No. 14).  Each party has filed responsive papers.  (Dkt. Nos. 19–21).

### B.    Plaintiff's Complaint

Plaintiff is the son of Jeanette Krol ("Ms. Krol") and the Administrator of her estate. (Dkt. No. 2, ¶¶ 1–5, 15).  On or about May 5, 2021, while a resident at a nursing home owned and operated by Defendant, Ms. Krol passed away as a result of contracting COVID-19.  (*Id.*, ¶¶ 12–13, 18–20).  Plaintiff asserts six State law tort claims: 1) negligence; 2) conscious pain and suffering; 3) wrongful death; 4) gross negligence; 5) medical and nursing malpractice resulting in wrongful death; and 6) medical and nursing malpractice resulting in conscious pain and

---

[1] On August 1, 2022, the case was reassigned to the undersigned.  (Dkt. No. 22).

suffering. (Dkt. No. 2, ¶¶ 82–135). Generally, these claims are premised on Defendant's alleged failures in taking safety precautions during the COVID-19 pandemic, which allegedly led to the death of Plaintiff's mother. (*Id.*, ¶¶14–15). Additionally, Plaintiff asserts a related seventh State law claim pursuant to N.Y. Pub. Health. L. §§ 2801-d and 2803-c. (*Id.*, ¶¶ 39-81). Plaintiff seeks compensatory damages on behalf of his mother and for himself, as well as punitive damages. (*Id.*, ¶ 15).

### C. Defendant's Notice of Removal

Defendant's notice of removal contends that removal is proper under 28 U.S.C. §§ 1441(a) and 1442(a)(1). (Dkt. No. 1, ¶¶ 27, 32, 47). First, Defendant claims that removal is appropriate pursuant to § 1442(a)(1) because it acted at the direction of the Secretary of Health and Human Services ("Secretary") and multiple federal agencies in responding to the pandemic. (*Id.*, ¶¶ 32–46). Second, Defendant asserts that federal question jurisdiction exists under § 1441(a) because: 1) the Public Readiness and Emergency Preparedness Act ("PREP Act") completely preempts Plaintiff's state law claims; and 2) Plaintiff's claims raise substantial questions of federal law pursuant to the doctrine in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). (*Id.*, ¶¶ 47–70).

## III. STANDARDS OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

In general, a party may move for dismissal at any time for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (stating that "in our federal system of limited jurisdiction . . . the court sua sponte, at any

stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.") (citation and internal quotations omitted)).  In reviewing a 12(b)(1) motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Raila v. United States.*, 355 F.3d 118, 119 (2d Cir. 2004).  However, "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).  "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon v. Captain's Cove Marine of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Furthermore, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit[.]"  *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)).  As such, "[a] court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."  *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n.*, 896 F.2d 674, 678 (2d Cir. 1990)).

**B.     28 U.S.C. § 1447**

A defendant may remove a civil action from State court by filing a notice of removal in the district court wherein the action is pending.  28 U.S.C. § 1446(a).  However, "[a] district

4

court must remand a case to state court '[i]f at any time before final judgment it appears that that district court lacks subject matter jurisdiction.'" *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (quoting 28 U.S.C. 1447(c)).  A plaintiff may move for remand under 28 U.S.C. 1447(c), and the motion essentially shares the same procedure used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), and it is properly evaluated using the same approach.  *See Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016) (citations omitted).

When a plaintiff moves to remand, the defendant "bears the burden of showing that federal jurisdiction is proper."  *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citing *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004)).  "Any doubts regarding the propriety of removal are resolved in favor of remand[.]"  *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citations omitted)).

## IV.     DISCUSSION

Although the parties filed their respective motions on separate grounds, their positions ultimately hinge on whether federal subject matter jurisdiction exists in this case.  That issue embraces several statutes and doctrines, which the Court will summarize before considering the parties' arguments.

### A.     Federal Question Jurisdiction

In general, the federal district courts have original jurisdiction over all civil actions arising under federal law.  28 U.S.C. § 1331.  "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (quoting *Metro. Life Ins. Co. v.*

5

*Taylor*, 481 U.S. 58, 63 (1987)).  Jurisdiction is not conferred merely because a defendant invokes a federal law as an affirmative defense.  *See Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011).  However, as relevant here, there are two exceptions to the well-pleaded complaint rule which may give rise to federal jurisdiction: 1) the complete preemption doctrine; and 2) the *Grable* doctrine.

### 1. Complete Preemption Doctrine

"Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."  *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005); *see also Dupervil v. Alliance Health Operations, LLC*, 516 F. Supp. 3d 238, 250 (E.D.N.Y. 2021) ("Complete preemption . . . occurs where 'the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

In analyzing complete preemption, the court "must ask whether the federal statute provides the exclusive cause of action for the asserted state-law claim[.]"  *Sullivan*, 424 F.3d at 271.  If so, the cause of action is removable under § 1441 as the "asserted state-law claim is in reality based on federal law[.]"  *Id.* at 275–76.  Notably, however, complete preemption "applies only in the very narrow range of cases where 'Congress has clearly manifested an

intent' to make a specific action within a particular area removable."[2]  *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998) (quoting *Metro. Life*, 481 U.S. at 66).

### 2. *Grable* Doctrine

In *Grable*, the Supreme Court stated that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312 (citation omitted). The *Grable* doctrine applies where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal citations and quotations omitted).

"A state-law claim 'necessarily' raises federal questions when the claim is affirmatively 'premised' on a violation of federal law." *Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 314). The substantiality inquiry looks "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. For example, the plaintiff in *Grable* pursued a state law quiet title action based on the Internal Revenue Service's alleged failure to provide notice "as defined by federal law." 545 U.S. at 314–15. The *Grable* court stated that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court[.]" *Id.* Additionally, the court acknowledged that the federal government maintained a "strong interest in the 'prompt and

---

[2] By way of reference, "[t]he Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption: § 301 of the Labor-Management Relations Act . . . ; § 502(a) of the Employee Retirement Income Security Act . . . ; and §§ 85 and 86 of the National Bank Act." *Sullivan*, 424 F.3d at 272 (citations omitted). Additionally, the Second Circuit has found complete preemption relative to the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), which created a federal cause of action for damages related to the September 11, 2001, terrorist attacks. *See In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005).

certain collection of delinquent taxes.'"  *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)).

### B. The PREP Act

In 2005, Congress enacted the PREP Act in response to the Severe Acute Respiratory Syndrome ("SARS") epidemic of 2003. *See* 42 U.S.C. §§ 247d *et seq*. "In order to encourage the use of products, drugs, and devices designed to address epidemics and pandemics and that are approved by the Federal Drug Administration," the PREP Act provides certain persons and entities immunities from civil liability under federal and state law. *Shapnik v. Hebrew Home for Aged at Riverdale*, 535 F. Supp. 3d 301, 304 (S.D.N.Y. 2021) (citing 42 U.S.C. § 247d-6d(a)(1)). In relevant part, the PREP Act states that:

> A covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services ("Secretary")] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1).

The PREP Act establishes a Covered Countermeasures Process Fund ("CCPF"), which is administered by the Secretary. 42 U.S.C. § 247d-6e(a). The CCPF provides monetary compensation to eligible persons with "covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* Compensation under the CCPF acts as the exclusive remedy for any claim or suit encompassed by the PREP Act, except for claims concerning "willful misconduct."[3]  42 U.S.C. § 247d-6e(d)(4).

---

[3] Like all claims falling within the PREP Act's scope, a plaintiff alleging "willful misconduct" must file a

8

The PREP Act sets forth an express provision preempting State laws that conflict with the Act's terms:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A)   is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B)   relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

28 U.S.C. 247d-6d(b)(8).

In March 2020, the Secretary issued a declaration, followed by a series of amendments, that triggered the PREP Act's immunities provision relative to the COVID-19 pandemic. 85 Fed. Reg. 15,198 (Mar. 17, 2020). Among other things, the Secretary updated the definition of "covered countermeasure" to include:

> [A]ny antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefore, or any device used in the administration of any such product, and all components and constituent materials of any such product.

---

claim with the Secretary before commencing an action. 42 U.S.C. § 247d-6d(d)(1). However, if the plaintiff does not accept compensation from the CCPF, an action regarding "willful misconduct" may then be filed—albeit only in the United States District Court for the District of Columbia. 42 U.S.C. § 247d-6e(d)(1), § 247d-6(e)(1).

85 Fed. Reg. at 15,202 (Mar. 17, 2020). In a later amendment, the Secretary included within the definition "any respiratory protective device approved by [NIOSH]." 85 Fed. Reg. at 79,193 (Dec. 9, 2020). The Secretary's declaration also stated that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." 85 Fed. Reg. at 15,202 (Mar. 17, 2020).

### C. Federal Officer Removal

Pursuant to the Federal Officer Removal statute, a case may be removed to federal court if it is against 1) the United States; 2) any agency of the United States; or 3) "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Private entities or persons may be considered "acting under" a federal officer where their actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). The term "'acting under,' moreover, is 'to be interpreted broadly,' and unlike the general removal statute, the federal-officer removal statute 'must be liberally construed.'" *Dupervil*, 516 F. Supp. 3d at 259 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008) (citations omitted)). Nonetheless, "the help or assistance necessary to bring a private person within the scope of the statute does not include simply *complying* with the law." *Watson*, 551 U.S. at 152 (citing *Davis*, 107 U.S. at 600)). "In other

words, there must exist a 'special relationship' between [the private entity and the federal government]." *Isaacson*, 517 F.3d at 137 (quoting *Watson*, 551 U.S. at 142)).

### D. Analysis

The central disputes among the parties are as follows: 1) whether Plaintiff's claims are completely preempted by the PREP Act; 2) whether removal is proper pursuant to the *Grable* doctrine; and 3) whether removal is proper pursuant to Federal Officer statute. The Court will address each in turn.

#### 1. Plaintiff's Claims Are Not Completely Preempted

Defendant argues that Plaintiff's State law claims are completely preempted because they relate to COVID-19 pandemic "countermeasures," and the PREP Act creates an exclusive federal cause of action for such matters. (Dkt. No. 19-1, pp. 9–13). In contrast, Plaintiff argues that the PREP Act does not apply here because the Complaint asserts "purely state law claims." (Dkt. No. 14-2, pp. 11, 16–21).

In analyzing the preemptive effect of the PREP Act, the Court finds instructive the recent decision in *Dupervil v. Alliance Health Operations, LLC*, 516 F. Supp. 3d 238 (E.D.N.Y. 2021). In *Dupervil*, the plaintiff pursued State law negligence claims concerning a COVID-19-related nursing home death. 516 F. Supp. 3d at 238. The defendants removed the case to federal court, asserting, *inter alia*, complete preemption under the PREP Act. *Id.* The court rejected the defendants' preemption argument, stating that the statute "does not provide the exclusive cause of action for claims that fall within its scope; in fact, for the most part, the [PREP] Act provides no causes of action at all." *Id.* at 250. In relevant part, the court explained:

> [I]t is important to note that the PREP Act is, at its core, an immunity statute;

11

> it does not create rights, duties, or obligations. *See* 42 U.S.C. § 247d-6d(a)(1). Accordingly, in providing immunity from suit to certain covered persons for certain types of claims, the PREP Act confers primary jurisdiction over most claims within its scope not to the federal courts but to the Secretary, who has the sole authority to administer and provide compensation from [the CCPF]. *See* 42 U.S.C. §§ 247d-6e(a), 247d-6e(b). Even with PREP Act claims involving 'willful misconduct,' which may be brought exclusively in the United States District of Columbia, the plaintiff must first exhaust administrative remedies, and may elect to accept compensation from the [CCPF] instead of filing suit in federal court. 42 U.S.C. §§ 247d-6e(d)(1), 247d-6e(d)(5); *see also* 42 U.S.C. §§ 247d-6d(d)(1), 247d-6d(e)(1). Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court. Defendants admit as much, making plain their purpose in removing: '[T]his Court must retain jurisdiction, and thereafter, it should conclude that the PREP Act applies for dismissal of this case.'

516 F. Supp. 3d at 251 (citation omitted).

Since *Dupervil*, several district court decisions within the Second Circuit have followed its reasoning. *See Escobar v. Mercy Medical Center*, No. 21-CV-02101, 2022 WL 669366, *2, U.S. Dist. LEXIS 39674, *5 (E.D.N.Y. Mar. 7, 2022); *Rivera v. Eastchester Rehabilitation and Health Care LLC*, No. 22-CV-02019, 2022 WL 2222979, *3, 2022 U.S. Dist. LEXIS 109917, *6-7 (S.D.N.Y. Jun. 21, 2022); *Leroy v. Hume*, 554 F. Supp. 3d 470, 477 (E.D.N.Y. 2021); *Shapnik v. Hebrew Home for Aged at Riverdale*, 535 F. Supp. 3d 301, 322 (S.D.N.Y. 2021).

In this case, the facts are virtually identical to *Dupervil*—Plaintiff alleges State law claims sounding in negligence against Defendant related to a nursing home's failure to take adequate safety precautions during the COVID-19 pandemic, which allegedly led to the death of Plaintiff's mother.[4] Although Defendant points to facts indicating that the decedent's death

---

[4] The Court need not decide whether the PREP Act completely preempts any "willful misconduct" claims because Plaintiff's claims clearly sound in negligence. Of note, Plaintiff asserts no intentional tort claims, and to the extent the word "willful" is mentioned in the complaint, it is in reference to Plaintiff's demand for punitive damages. (Dkt. No. 2, ¶¶ 15, 111–13); *see also Shapnik*, 535 F. Supp. 3d at 317 (citations

12

took place as the nursing home deployed COVID-19 countermeasures, even if Plaintiff's claims do implicate the PREP Act, the Court finds that the Act does not provide the exclusive remedy. *See Dupervil*, 516 F. Supp. 3d at 250.   Therefore, Plaintiff's claims are not completely preempted by the PREP Act, for substantially the reasons set forth in *Dupervil*, and removal is not supported on this basis.   *Id.*; *see also Shapnik*, 535 F. Supp. 3d 301 (stating that "the Court thus joins the 'growing consensus among courts across the country that state-law claims of negligence and wrongful death brought against a nursing home for failure to protect against the spread of COVID-19, like those that [the plaintiffs allege], are not properly characterized as federal-law claims under the PREP Act") (quoting *Dupervil* and citing cases).

## 2. The *Grable* Doctrine Does Not Apply

In seeking to justify removal pursuant to the *Grable* doctrine, Defendant argues that "a federal issue is 'necessarily raised' because the PREP Act, and its implementation to combat COVID-19, involves substantial federal issues in terms of the national, unified response to the pandemic."   (Dkt. No. 19-1, p. 32).   Defendant adds that a "federal issue is necessarily raised because the PREP Act encompasses any claims that would fall within its definitions, and those claims include the ones asserted here."   (*Id.*, pp. 31–32).

Plaintiff argues that the *Grable* doctrine is inapplicable because the Complaint is not "affirmatively premised" on the PREP Act, as the statute contains no essential elements of any of the asserted claims.   (Dkt. No. 14-2, p. 2.).   Plaintiff states that even if PREP Act immunity is

---

omitted) (stating that "the exclusive jurisdiction in the PREP Act is only for 'causes of action' based on willful misconduct, and there is no separate cause of action for punitive damages under New York law.").

13

an affirmative defense to State law claims, "it does not mean that Plaintiff's 'claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act.'" (*Id.*, p. 24 (quoting *Dupervil*, 535 F. Supp. 3d at 258)).

The Court finds that the *Grable* doctrine does not support removal in this case because Plaintiff's claims do not necessarily raise issues of federal law. *See Dupervil*, 535 F. Supp. 3d at 258–59. Essentially, Plaintiff asserts State law negligence claims, which comprise the familiar elements of duty, breach, causation, harm, and exist independent of provisions set forth in the PREP Act. *See id.* Whether Defendant has a viable immunity defense does not mean that Plaintiff's claims are "affirmatively premised on, or on their face necessarily require resolution of, the PREP Act." *Id.* at 258. Nor is this a case where the issues raised by Plaintiff are especially important to the federal system as a whole. Indeed, such matters are commonly dealt with in State court. Consequently, the *Grable* doctrine does not apply here.[5]

### 3. Federal Officer Removal Is Improper

Finally, Defendant asserts that jurisdiction exists because during the pandemic it was acting as *de facto* federal officer. (Dkt. No. 19-1, p. 24). Defendant argues that "it, and

---

[5] The Court also rejects Defendant's argument that this Court should extend "*Chevron* deference" to the United States Department of Health and Human Services ("HHS") Office of General Counsel's Advisory Opinion interpreting the Secretary's declaration, which provides that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable* . . . in having a uniform interpretation of the PREP Act." (Dkt. No. 1, ¶¶ 63–70; Dkt. No. 10-14, pp. 12–14). An agency's statutory interpretation is entitled to *Chevron* deference only when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). However, the HHS Advisory Opinion crucially lacks the force or effect of law. *See Dupervil* at 252 (quoting *Mead*, 553 U.S. at 226–27) (declining to extend *Chevron* deference to Advisory Opinion 21-01, even assuming Congress delegated requisite rulemaking authority as the opinion "explicitly was not 'promulgated in the exercise of that authority.'").

countless of its counterparts nationwide, were effectively enlisted by HHS to use skilled employees and medical talent for the benefit of the greater good of stopping COVID-19." (*Id.*, p. 25). Defendant contends that "the PREP Act and nearly all of HHS's COVID-19 directives declare that the federal government relied on its close, directed relationship with licensed skilled nursing centers (which were declared healthcare facilities), like [D]efendant, for its 'whole-of-nation' response." (*Id.*, p. 27 (quoting 42 U.S.C. § 247d-6d(b)).

In response, Plaintiff argues that Defendant was not "acting under" a federal officer because no "special relationship" existed between it and the federal government. (Dkt. No. 14-2, p. 21). Plaintiff asserts that to the extent Defendant helped or carried out duties of a federal agency, it was merely complying with the law. (*Id.*, pp. 21–22).

Looking at the facts in this case, Defendant has demonstrated only that it was a highly regulated entity complying with the Secretary's directives issued in response to the COVID-19 pandemic. *See Dupervil*, 516 F. Supp. 3d at 259. There is no indication that Defendant had a special relationship with the federal government—indeed virtually every healthcare provider in the country had a similar role in responding to the COVID-19 pandemic. Therefore, the Court finds that Defendant was not acting under a federal officer for purposes of § 1442(a)(1).[6] *See*

---

[6] The cases cited by Defendant involving meatpacking plants are readily distinguishable because there were significant facts showing a special relationship with the federal government. *See Wazelle v. Tyson Foods, Inc.*, No. 20-CV-203, 2021 WL 2637335, 2021 U.S. Dist. LEXIS 119085 (N.D. Tex. Jun. 25, 2021); *Fields v. Brown*, 519 F. Supp. 3d 388 (E.D. Tex. 2021). Both *Fields* and *Wazelle* involved unsafe working conditions alleged by employees of Tyson Foods, which, at the outset of the pandemic, "participated in a meeting between President Trump and other food industry executives 'to discuss the stability of the supply chain.'" 2021 WL 2637335, *4, 2021 U.S. Dist. LEXIS 119085, *2; *see also* 519 F. Supp. 3d at 392. Tyson Foods also worked directly with United States Food Safety and Inspection Service ("FSIS"), "communicated informally but regularly with FSIS Administrator Paul Kiecker," and "had employees staffed onsite at [Tyson Foods'] meatpacking plants." *Id.* at **2–3.

*Dupervil*, 516 F. Supp. 3d at 259–60 (citing *Watson*, 551 U.S. 142, 152)).

### E.  Summary

After careful review of the record, the Court finds that it does not have jurisdiction over the allegations in the Complaint. Removal was not proper and the case must be remanded to State court. Because jurisdiction is lacking, the Court will not address the parties' arguments regarding dismissal on the merits. *See Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

## V.  CONCLUSION

Accordingly, for the above-stated reasons it is hereby:

**ORDERED** that Plaintiff's Motion to Remand (Dkt. No. 14) is **GRANTED;** and it is further

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 10) is **DENIED as moot**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated: August 22, 2022
      Syracuse, New York

*/s/ Norman A. Mordue*
Norman A. Mordue
Senior U.S. District Judge